Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| **ELIZABETH TORRES ALVARADO**<br><br>Peticionaria<br><br>v.<br><br>**ORLANDO JOSÉ APONTE ROSARIO**<br><br>Recurrido | **TA2025CE00830** | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>**DO2023CV00163**<br><br>Sobre:<br>**LIQUIDACIÓN DE COMUNIDAD DE BIENES** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de febrero de 2026.

Comparece ante nos la peticionaria, Elizabeth Torres Alvarado, en adelante Torres Alvarado, solicitando que revoquemos la determinación emitida por el Tribunal de Primera Instancia, Sala Superior de Toa Alta, en adelante TPI-Toa Alta, el 29 de octubre de 2025. En dicha orden, el Foro Primario denegó la solicitud de Torres Alvarado para enmendar la demanda y acumular como parte indispensable a Broken Bridge, Limited Liability Company, en adelante, Broken Bridge LLC.

Por los fundamentos que esbozaremos a continuación, *revocamos* el dictamen recurrido.

**I.**

El 3 de agosto de 2023, Torres Alvarado presentó una *"Demanda"* para la liquidación de la comunidad de bienes post-ganancial habida entre esta y el recurrido, Orlando José Aponte Rosario, en adelante, Aponte Rosario.[1] En su escrito, la peticionaria

---
[1] Entrada 1 de SUMAC.

sostuvo que, durante la vigencia del matrimonio, las partes adquirieron varios bienes inmuebles.

Surge de la *"Demanda"* que el 7 de enero de 2016, Aponte Rosario incorporó la entidad Broken Bridge LLC, identificada con número de registro 366848, como una corporación de responsabilidad limitada con fines de lucro, utilizando -según alegado- fondos pertenecientes a la sociedad de bienes gananciales, entonces existentes entre las partes. Asimismo, Torres Alvarado alegó que Aponte Rosario ejerce el control exclusivo sobre los ingresos, ganancias, bienes y propiedades de dicha entidad, y que nunca le ha provisto la participación que, a su juicio, le corresponde en la corporación.

El 31 de octubre de 2023, Aponte Rosario presentó su *"Contestación a Demanda y Reconvención"*.[2] En esta, alegó que la corporación de responsabilidad limitada con fines de lucro, Broken Bridge LLC, fue incorporada con fondos y capital privativo de este. Sostuvo que "desde su incorporación, las partes reconocieron el carácter privativo de la corporación porque la demandante nunca ha realizado ninguna clase de aportación, ni ha tenido ninguna clase de interés, participación o titularidad sobre la misma."[3] Aponte Rosario adujo que la peticionaria actuó de mala fe, con falta de diligencia y mediante alegaciones falsas.[4]

Del expediente surge que, las partes llevaron a cabo gestiones de descubrimiento de prueba, incluyendo interrogatorios y deposiciones. Según Torres Alvarado alega, en el curso de dicho trámite, Aponte Rosario se negó a contestar preguntas relacionadas al origen y destino de fondos vinculados a transacciones inmobiliarias, o sobre Broken Bridge, alegando que dicha entidad

---

[2] Entrada 10 de SUMAC.
[3] *Íd.*
[4] *Íd.*

no era parte del pleito. A raíz de ello, Torres Alvarado solicitó una extensión del término de descubrimiento de prueba, la cual fue declarada No Ha Lugar.[5]

El 22 de septiembre de 2025, el TPI-Toa Alta emitió una *Minuta,* en la cual reiteró que el descubrimiento de prueba había concluido. Sin embargo, **el foro primario consignó que, para acumular una nueva parte el pleito, resultaba necesario enmendar previamente la demanda**.[6]

En vista de lo anterior, el 23 de octubre de 2025, Torres Alvarado presentó una *"Solicitud de permiso para enmendar Demanda a fin de acumular Parte Indispensable Broken Bridge Limited Liability Company"[7],* a la cual anejó la *"Demanda Enmendada".[8]* Alegó que se vio compelida a proceder de esa forma ante la negativa de Aponte Rosario a colaborar durante el descubrimiento de prueba. No obstante, mediante *"Orden"* notificada el 29 de octubre de 2025, el TPI-Toa Alta dispuso no autorizar la enmienda solicitada en esa etapa procesal.[9]

Inconforme con dicha determinación, el 28 de noviembre de 2025, la peticionaria presentó ante esta Curia un recurso de *Certiorari,* en el cual impugna la negativa del Foro Primario de permitir la enmienda a la demanda. En apoyo a su solicitud, formuló el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL HABER DECLARADO NO HA LUGAR LA SOLICITUD DE ENMENDAR LA DEMANDA A FIN DE ACUMULAR COMO PARTE INDISPENSABLE LA COMPAÑÍA DE RESPONSABILIDAD LIMITADA CREADA Y REGISTRADA EN EL DEPARTAMENTO DE ESTADO DURANTE LA VIGENCIA DEL MATRIMONIO Y CON FONDOS DEL MATRIMONIO.

---

[5] Entrada 1 de SUMAC, págs. 6-8.
[6] Entrada 112 de SUMAC.
[7] Entrada 113 de SUMAC.
[8] *Íd.,* anejo 1.
[9] Entrada 118 de SUMAC.

Mediante *"Resolución"* del 8 de diciembre de 2025, concedimos a la parte recurrida hasta el 9 de diciembre de 2025 para presentar su oposición a la expedición del auto, conforme a la Regla 37 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 56, 215 DPR ___ (2025). Transcurrido dicho término sin que el recurrido compareciera, el recurso quedó perfeccionado para nuestra consideración. Procedemos a expresarnos.

## II.

### A. *Certiorari*

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este Foro Apelativo podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, este Tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, pág. 59. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D)  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E)  Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F)  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el Foro Apelativo evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *W.M.M., P.F.M. et al. v. Colegio*, 211 DPR 871, 902-903 (2023); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).

### B.  *Enmiendas a las Alegaciones*

La Regla 13 de las de Procedimiento Civil, supra, permite a las partes en un pleito enmendar sus alegaciones para incluir cuestiones omitidas o para clarificar reclamaciones. En específico, la Regla dispone que:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva, o si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera. *La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad.* Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal de otro modo lo ordene. (Énfasis nuestro).

Nótese que la autorización para conceder una enmienda a las alegaciones deberá concederse de manera liberal. *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 198 (2012); *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322, 334 (2010). Ante ello, los tribunales poseen amplia facultad discrecional para determinar si permiten una enmienda a una alegación, inclusive en una etapa avanzada de los procedimientos. *Colón Rivera v. Wyeth Pharm.*, supra, pág. 198.

Ahora bien, a pesar de que las Reglas de Procedimiento Civil adoptan un enfoque liberal para la autorización de enmiendas, la parte proponente debe ser diligente en su causa. *Íd.*, a la pág. 203. De igual forma, dicha liberalidad no opera en el vacío. En virtud de ello, el Tribunal Supremo ha establecido cuatro factores que

demarcan el ámbito discrecional de los tribunales a la hora de autorizar una enmienda. *Íd.,* a la pág. 199. Estos factores son: (1) el impacto del tiempo transcurrido previo a la enmienda, (2) la razón de la demora, (3) el perjuicio a la otra parte, y (4) la procedencia de la enmienda solicitada. *Íd.*; *S.L.G. Sierra v. Rodríguez,* 163 DPR 738, 748 (2005). "Estos factores no operan de modo aislado, por lo cual hemos adoptado un enfoque dinámico mediante el cual deben considerarse los cuatro (4) conjuntamente". *Colón Rivera v. Wyeth Pharm.,* supra, pág. 199.

Con relación al primer factor, la jurisprudencia establece que el paso del tiempo, por sí solo, no obliga a los tribunales a negar el permiso para enmendar las alegaciones. *Íd.* Sin embargo, el Tribunal Supremo ha enfatizado que ***"el factor que resulta de mayor relevancia al momento de evaluar una solicitud de autorización para enmendar las alegaciones es el perjuicio que puede causarle a la parte contraria."*** *S.L.G. Font Bardón v. Mini-Warehouse,* supra, pág. 335. Véase, además, *Colón Rivera v. Wyeth Pharm.,* supra, pág. 199.

Ocurre un perjuicio indebido cuando "la enmienda (1) cambia sustancialmente la naturaleza y alcance del caso, convirtiendo la controversia inicial en tangencial y/o (2) obliga a la parte contraria a incurrir en nuevos gastos, alterar su estrategia en el litigio o comenzar nuevo descubrimiento de prueba". *Colón Rivera v. Wyeth Pharm.,* supra, pág. 305. (Énfasis nuestro). Por lo tanto, de existir un perjuicio indebido, sumado al análisis de los demás factores que establece la jurisprudencia, la enmienda a la alegación no deberá autorizarse.

### C. Descubrimiento de Prueba

El procedimiento para llevar a cabo el descubrimiento de prueba está regido por las Reglas de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R 23.1 (2009). El descubrimiento de prueba es

"la médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de justicia que tanta mina la fe del pueblo en el sistema judicial". *McNeil Healthcare, LLC v. Mun. Las Piedras II*, 206 DPR 659, 672 (2021); *Rivera et al. v. Arcos Dorados et al.*, supra; *Alvarado v. Alemany*, 157 DPR 672, 682 (2002). El descubrimiento de prueba es el mecanismo utilizado por las partes para "obtener hechos, título, documentos u otras cosas que están en poder del demandado o que son de su exclusivo conocimiento y que son necesarias [...] para hacer valer sus derechos". (Citas omitidas).

Los foros primarios gozan de amplia discreción para regular el descubrimiento de prueba, por lo que los foros apelativos no deben intervenir con dicha discreción, salvo que medie prejuicio, parcialidad o error manifiesto en la aplicación de una norma procesal o sustantiva. *Consejo de Titulares v. Triple S*, 2025 TSPR 82, 216 DPR ___ (2025); *Torres González v. Zaragoza Meléndez*, supra; *Rivera y otros v. Bco. Popular*, supra (2000). Este criterio también concierne a la intervención de los foros apelativos con las determinaciones interlocutorias de los tribunales de primera instancia. *McNeil Healthcare v. Mun. Las Piedras II*, supra, pág. 672; *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000).

De la misma forma, en términos generales, el propósito del descubrimiento de prueba es: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar la prueba. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2802, págs. 333-334. Es por ello, que nuestro Máximo Foro Judicial ha reiterado que el alcance del descubrimiento de prueba es amplio y liberal. *Consejo de Titulares v. Triple S,* supra; *Torres González v. Zaragoza Meléndez,* supra, *Cruz Flores v. Hosp. Ryder et al.,* 210 DPR 465, 29 (2022). *McNeil Healthcare v. Mun. Las Piedras II,* supra;

*Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 490 (2019); *Casasnovas et al. v. UBS Financial et al.,* 198 DPR 1040, 1054-55 (2017).

Ese alcance amplio y liberal claramente propende a que, mediante el buen uso del descubrimiento, se aceleren "los procedimientos, se propicien las transacciones y se eviten las sorpresas indeseables durante el juicio. *McNeil Healthcare v. Mun. Las Piedras II, supra.* De igual forma, el Tribunal Supremo de Puerto Rico ha expresado que **los tribunales de instancia tienen amplia discreción para regular el ámbito del descubrimiento**, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. *Cruz Flores v. Hosp. Ryder et al.,* supra.

Cónsono con lo anterior, la Regla 34.3 de Procedimiento Civil, 32 LPRA Ap. V., R. 34.3, **faculta al Tribunal para emitir sanciones ante el incumplimiento de cualquier orden relacionada con el descubrimiento de prueba**. En síntesis, entre las sanciones aplicables, contempla el desacato, así como la emisión de órdenes relacionadas a lo siguiente: (1) que las materias comprendidas sean consideradas probadas; (2) una orden para impedir que la parte que incumple se sostenga u oponga a determinadas reclamaciones o defensas o para prohibirle presentar determinada materia en evidencia; (3) eliminar alegaciones o parte de ellas; (4) suspender todos los procedimientos posteriores hasta que la orden sea acatada; (5) desestimar el pleito o procedimiento, o cualquier parte de ellos; (6) dictar sentencia en rebeldía; **(7) considerar como desacato al tribunal la negativa a obedecer cualquiera de dichas órdenes** excepto una orden para someterse a examen físico o mental; (8) sanciones económicas a cualquier parte, testigo, y representante legal, y; (9) el pago de los gastos incurridos incluyendo honorarios, salvo que se demuestre una justificación válida para el incumplimiento.

En *Valentín v. Mun. de Añasco*, 145 DPR 887, 896 (1998), Nuestro Más Alto Foro interpretó el alcance de la derogada Regla 34.2 de Procedimiento Civil, la cual es análoga a la actual Regla 34.3(b) de Procedimiento Civil, *supra*. En su interpretación el Tribunal Supremo de Puerto Rico, determinó que dicha disposición provee que un tribunal puede prohibir la presentación de determinada prueba, cuando la parte interesada en presentarla incumpla con una orden del tribunal relacionada con el descubrimiento de prueba. Específicamente, para que proceda este tipo de sanción se requiere que: 1) el tribunal haya emitido antes una orden para llevar a cabo o permitir descubrimiento de prueba, y 2) que la parte que interesa la presentación de la prueba hubiese incumplido la orden referida. *Valentín v. Mun. de Añasco*, supra, a la pág. 894.

El estado de derecho actual avala la imposición de sanciones severas a la parte que incumpla una orden relacionada al descubrimiento de prueba. *HRS Erase v. CMT*, 205 DPR 689, 700 (2020). No obstante, el ordenamiento jurídico advierte que las mismas no deben emplearse de manera liviana, sino que, previo a ello, resulta de aplicación el empleo de sanciones menos drásticas. *Íd*. En este contexto, se ha resuelto que la medida severa de excluir el testimonio de un perito es análoga a la medida extrema de la desestimación, por lo que solo debe ser aplicada de manera excepcional. *Rivera et al. v. Arcos Dorados et al.,* supra, págs. 206-207; *Valentín v. Mun. De Añasco*, supra, pág. 895.

Es una norma consabida de nuestro jurídico, la que reconoce e impulsa el interés de que todo litigante tenga su día en corte. *Rivera et al. v. Superior Pkg., Inc. et al.,* 132 DPR 115, 124 (1992). Ello se fundamenta en la política judicial que establece que los casos se ventilen en sus méritos de forma rápida, justa y económica. *Amaro González v. First Fed. Savs.,* 132 DPR 1042, 1052 (1993).

**III.**

En el caso de marras, la peticionaria nos solicita que revoquemos el dictamen del Foro Primario que denegó la solicitud de enmendar la demanda a los fines de incluir como parte indispensable a Broken Bridge, LLC, entidad creada durante la vigencia del matrimonio. A la luz del expediente, *concluimos que procede la expedición del recurso de certiorari y la revocación de la determinación recurrida.*

Como punto de partida, reiteramos que la expedición del certiorari es un ejercicio discrecional. No obstante, dicha discreción no se ejerce en el vacío, sino en función de evitar resultados procesales injustos, inconsistentes o que frustren la adjudicación de las controversias en sus méritos. Precisamente, ese es el escenario que se configura en el presente caso.

Reiteramos que surge del expediente que, mediante minuta emitida el 22 de septiembre de 2025, el propio TPI-Toa Alta reiteró que el descubrimiento de prueba había concluido y consignó, además, *que para acumular una nueva parte al pleito era necesario enmendar la demanda.* En otras palabras, el foro primario reconoció expresamente que la vía procesal adecuada para incorporar a la entidad era la presentación de una demanda enmendada.

Actuando conforme a dicha determinación judicial, la peticionaria presentó oportunamente una solicitud de permiso para enmendar la demanda con el fin de acumular a Broken Bridge, LLC, como parte indispensable. Sin embargo, apenas días después, el mismo tribunal resolvió no autorizar la enmienda, amparándose en la etapa procesal del caso, sin atender el hecho de que fue ese propio foro quien había delimitado previamente el mecanismo procesal disponible para lograr la comparecencia de la entidad.

En este escenario particular, la intervención de este Foro resulta necesaria no para sustituir livianamente el criterio del foro

primario, sino para corregir un curso procesal que, de mantenerse, conduciría a un fracaso de la justicia. La determinación recurrida no puede evaluarse de forma aislada, sino a la luz de las actuaciones previas del propio tribunal, las cuales crearon una expectativa procesal razonable y delimitaron el único remedio disponible para la peticionaria.

Así las cosas, entendemos que concurren las circunstancias excepcionales que justifican la expedición del recurso de certiorari. La negativa del foro de instancia a permitir la enmienda solicitada, luego de haber indicado expresamente que ese era el mecanismo procedente para acumular la parte, constituyó un ejercicio irrazonable de la discreción judicial que amerita la intervención correctiva de este Foro.

Por consiguiente, expedimos el auto de *Certiorari*, revocamos la *Orden* recurrida y devolvemos el caso al TPI-Toa Alta para que permita la enmienda de la demanda y continúen los procedimientos de forma consistente con lo aquí resuelto.

**IV.**

Por los fundamentos antes expuestos, se expide el auto de *Certiorari* solicitado, se *revoca* la *Orden* emitida por el Foro de Instancia, el 29 de octubre de 2025.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones